IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 4, 2002 Session

## BETTY BERRYHILL v. CHARLES THOMAS RHODES

**Direct Appeal from the Juvenile Court for Shelby County**
**No. G8355      Claudia S. Haltom, Juvenile Court Referee**

---

**No. W2001-00748-COA-R3-JV - Filed May 2, 2002**

---

This is a child support case with significant appellate history. Pursuant to the Tennessee Supreme Court's opinion in ***Berryhill v. Rhodes***, 21 S.W.3d 188, 188-89 (Tenn. 2000), this case was before the trial court in order to determine Dr. Rhode's retroactive child support obligations. The court applied the Child Support Guidelines from 1989 until the date the child reached majority, in September 1995. The court deviated from the guidelines in assessing Dr. Rhodes's child support obligation from 1977 to 1989. The court calculated the total arrearage as $180,202.00. In assessing interest on the judgment, the court determined that interest should accrue from August 21, 1996, the date of the trial court's original judgment in this matter. Both parties take issue with the trial court's decision. We reverse in part, affirm in part, and remand for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in part;**
**Affirmed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and D'ARMY BAILEY, SP. J., joined.

Robert L. Green, Memphis, Tennessee, for the appellant, Charles Thomas Rhodes.

Mitchell D. Moskovitz and Adam N. Cohen, Memphis, Tennessee, for the appellee, Betty Berryhill.

### OPINION

This appeal represents the second time this dispute has been before this Court. In the first trial, the juvenile court denied Ms. Betty Berryhill's action for retroactive child support. The court denied Ms. Berryhill's request because Ms. Berryhill and Charles Thomas Rhodes had voluntarily entered into an agreement regarding child support at the child's birth. The court entered its decision on August 21, 1996. Ms. Berryhill appealed the court's decision.

In the first appeal, this Court determined that an agreement existed between the parties which governed Dr. Rhodes's child support obligations. ***Berryhill v. Rhodes***, No. 02A01-9701-JV-00011,

1997 Tenn. App. LEXIS 692, at *12 (Tenn. Ct. App. Oct 14, 1997). Further, we stated that section 36-5-101(e)(1) of the Tennessee Code authorized the court to deviate from the guidelines in certain circumstances. *Id.* Based on the facts and equity between the parties in the case, we stated that it would be "unjust and inappropriate to apply the guidelines retroactively." *Id.* Finally, we remanded the case for a determination of Ms. Berryhill's attorney's fees. *Id.* at *15.

Ms. Berryhill appealed our decision to the Tennessee Supreme Court. The court heard Ms. Berryhill's appeal and provided the following summary of their opinion:

> We granted this appeal to determine: (1) whether parties may enter into a private agreement regarding the payment of child support outside the Child Support Guidelines; (2) whether the evidence preponderates against an award of retroactive child support in excess of the amount agreed upon by the parties; and (3) whether the plaintiff rebutted the presumption that a two-year average of income should be used to determine the amount of child support due under the guidelines. After careful consideration, we hold that a private agreement as to child support payments violates public policy, that the trial court failed to properly apply the Child Support Guidelines to determine the amount of child support, and that the plaintiff successfully rebutted the presumption that a two-year average of income should be used to determine the proper amount of child support. We remand the case for an application of the Child Support Guidelines to determine the amount of child support that would be owed under the guidelines and, if appropriate, for findings of fact justifying a conclusion that the application of the guidelines would be unjust or inappropriate.

*Berryhill v. Rhodes*, 21 S.W.3d 188, 188-89 (Tenn. 2000).

The juvenile court heard the case on remand and conducted two separate hearings. On January 26, 2001, the court continued the case, providing the following reasons for its decision:

1. A fact finding hearing with regard to actual medical and dental expenses;

2. Proof regarding actual costs to support said child prior to implementation of guidelines;

3. Proof regarding deviation from guidelines;

4. Argument pertaining to whether interest on arrearage should be simple or compound.

At the second hearing, the court concluded that the application of the guidelines from 1977[1] to 1989 would be "unjust or inappropriate."[2] The court then calculated the pre-Child Support Guidelines arrearage. Based on Ms. Berryhill's proof regarding living expenses and the expenses of the child, the court determined the pre-guideline arrearage to be $87,720. Next, the court determined the arrearage for the period of time beginning with the creation of the Child Support Guidelines. After giving Dr. Rhodes credit for other child support obligations and for amounts previously paid to Ms. Berryhill during this time, the court concluded that Dr. Rhodes owed $87,324 in back child support. The court also determined that Mr. Rhodes owed Ms. Berryhill $5,158 to reimburse her for certain medical and insurance expenses she incurred as a result of raising the child from October 1989 to September 1995. Accordingly, the court added the above totals and calculated the total arrearage as $180,202.

The court then assessed interest on the arrearage. The court ruled that interest would be assessed from August 21, 1996, the date of the original judgment, until the full debt is paid. The court calculated the interest on the arrearage as follows:

a. 1996 -  $7,761.03 (131 days)
b. 1997-  $22,555.56
c. 1998-  $25,262.23
d. 1999-  $28,293.70
e. 2000-  $31,688.94
f. 2001-  $6,320.42 (65 days)

Thus, the court concluded that the total arrearage, including interest, was $302,083.88. The court ruled that interest, in the amount of $97.28, would continue to accrue daily until paid for 2001. The court also stated that interest would continue to accrue at a yearly rate of 12% on any unpaid balance. Finally, the court ordered that Dr. Rhodes pay Ms. Berryhill's accountant's fee, pay Ms. Berryhill's attorney's fee, and pay court costs.

Dr. Rhodes appeals the trial court's decision. The issue, as stated by Dr. Rhodes, is the following:

Did the trial court commit error by failing to compute [the] interest award from the date of a judgment for the appellee as is required by T.C.A. [§] 47-14-122?

Ms. Berryhill raises additional issues for our review. These issues, as stated by Ms. Berryhill are the following:

---

[1] The couple's child was born on September 5, 1977.

[2] The Child Support Guidelines became effective on October 13, 1989.

1.  Did the trial court err in refusing to apply the Tennessee Department of Human Services Child Support Guidelines retroactively to the date of the child's birth?

2.  Did the trial court err in refusing to assess interest on Father's child support obligation from the date of the child's birth?

3.  Should Appellee be awarded her reasonable attorney fees and suit expenses incurred in defending this appeal?

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *e.g., Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the court's legal conclusions, our review is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

Dr. Rhodes contends that the trial court erred in computing interest from the date of the original trial in this matter, August 21, 1996. Instead, Dr. Rhodes argues that the trial court should have begun computing interest on the arrearage on March 5, 2001, the date the court entered its judgment upon remand.

The disposition of this issue requires an examination of the supreme court's opinion in this case, viewed in light of relevant case law regarding the effect of appellate court opinions on trial court judgments. In *Gotten v. Gotten*, 748 S.W.2d 430, 431 (Tenn. Ct. App. 1987), the trial court required Wife to make mortgage payments on the divorced couple's residence. Wife appealed that decision, and we reversed, requiring Husband to make those payments as rehabilitative alimony. *Id.* On remand, Wife filed a motion to compel Husband to reimburse her for the payments she had previously made pursuant to the trial court's original order. *Id.* The trial court denied her motion, and Wife appealed the court's decision. On the second appeal before this Court, we stated the following:

> The appellate court acts only upon the record in the case in the trial court and when the appellate court enters an order modifying the trial court order it is doing what should have been done in the first instance. The modification of the trial court order should be effective as of the date of the trial court order. Therefore, we hold that a judgment of the appellate court reversing or modifying the trial court judgment providing for periodic payments of alimony or child support is effective as of the date of the trial court judgment, unless the appellate court judgment specifies otherwise. Therefore, the judgment of the trial court refusing to require Husband to reimburse Wife for the ten monthly mortgage payments is reversed.

*Id.*

This court relied on *Gotten* in *Newton v. Cox*, 954 S.W.2d 746, 749 (Tenn. Ct. App. 1997). In *Newton*, Plaintiff sued his former attorney, asserting that the attorney's fifty percent contingency fee violated applicable statutory law. *Id.* at 747-48. The trial court upheld the contract, and this Court affirmed. *Id.* at 748. The supreme court reversed this Court's decision, and on remand, the trial court failed to award Plaintiff the excess funds still held by the attorney. *Id.* Plaintiff appealed the trial court's decision. *Id.* After awarding Plaintiff the excess fees held by the attorney, we turned to the question of post-judgment interest. *Id.* at 749. Citing our decision and reasoning in *Gotten*, we held that Plaintiff was entitled to post-judgment interest from the date of the original judgment in this case. *Id.* Accordingly, because we were "doing what should have been done in the first instance," statutory interest accrued on the full amount of excess fees which should have awarded to Plaintiff in the original judgment. *Id.* at 749 n.2. (quoting *Gotten*, 748 S.W.2d at 431).

This Court provided additional insight to Mr. Rhodes's issue in *Bunch v. Bunch*, No. 03A01-9805-GS-00156, 1999 Tenn. App. LEXIS 202 (Tenn. Ct. App. March 24, 1999) (*no perm. app. filed*). In the first appeal of that case, we held that certain marital property was incorrectly valued by the trial court. *Id.* at *2. We assigned the appropriate value and remanded the case to the trial court "for the purpose of redetermining the apportionment of the [parties'] marital assets." *Id.* On remand, the trial court ruled that Wife was entitled to an additional award. *Id.* at *3. Wife appealed the trial court's decision, asserting that the trial court erred by failing to award her interest on the new award from the date of the original judgment. *Id.* at *9. Wife cited several cases to support her contention that she was entitled to interest on the new award which should have accrued from the date of the original judgment.[3] *Id.* at *10. We distinguished those cases from Wife's case, stating that in those cases, "the appellate court *modified* the lower court's judgment, *i.e.*, changed specific monetary awards therein." *Id.* In Wife's case, we required the trial court to take further action on remand. *Id.* at *11. We left the actual distribution of the marital property to the trial court. *Id.* Therefore, because we could not act upon the record and modify the trial court's judgment, we stated that "a final determination regarding the division of property occurred only upon remand of the case and the trial court's subsequent judgment." *Id.*

In the present case, the supreme court held that private agreements regarding child support violate public policy. *Berryhill v. Rhodes*, 21 S.W.3d 188, 192 (Tenn. 2000). The court remanded the case in order for the juvenile court to determine the amount of child support Dr. Rhodes would owe under the guidelines. *Id.* at 192-93. The court also ruled that the trial court should determine if an upward or downward deviation from the guidelines would be appropriate in this case. *Id.* at 193. Further, the court held that Ms. Berryhill should be permitted to offer additional evidence regarding the child's medical and dental expenses. *Id.* at 194. Finally, the court held that Ms. Berryhill had successfully rebutted the presumption that a two-year average of Dr. Rhodes's income should be used to determine the proper amount of child support due under the guidelines. *Id.* The court permitted Dr. Rhodes to introduce additional evidence on this issue. *Id.*

_____

[3]The cases Wife relied on were *Wade v. Wade*, 897 S.W.2d 702 (Tenn. Ct. App. 1994), *Inman v. Alexander*, 871 S.W.2d 153 (Tenn. Ct. App. 1993), and *Inman v. Inman*, 840 S.W.2d 927 (Tenn. Ct. App. 1992).

We believe this case is analogous to our decision in **Bunch**. Here, the supreme court did not remand the case in order for the juvenile court to simply enter a judgment in accordance with its opinion. The court did not modify the judgment in order for the trial court to "do what should have been done in the first instance," as was the case in **Gotten** and **Newton**. The supreme court held that private agreements regarding child support violate public policy, and remanded the case in order for the trial court to determine the amount Dr. Rhodes would owe pursuant to the guidelines. Similar to this Court's opinion in **Bunch**, the supreme court in the present case did not know what effect its opinion would have on the pecuniary amount of the trial court's judgment upon remand. When the case left the supreme court, the trial court was required to take further action to determine the amount of Ms. Berryhill's award.[4] The trial court had to determine the proper time frame to calculate Dr. Rhodes's average gross income, as Ms. Berryhill rebutted the two-year presumption. Further, and more importantly, the trial court had to determine if a deviation from the guidelines would be appropriate under the facts of this case. In short, the trial court had to determine, considering additional evidence and argument from the parties, the correct amount of child support arrearage based upon the supreme court's opinion.

Section 47-14-122 of the Tennessee Code provides the following:

Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial.

Tenn. Code Ann. § 47-14-122 (2001). Because, under the facts of this case, a final determination regarding the child support arrearage occurred only after the supreme court's remand of the case and the trial court's subsequent judgment, the court erred by computing interest from August 21, 1996. The date the court "returned the verdict" pursuant to section 47-14-122 of the Tennessee Code was March 5, 2001, the date the court entered the final judgment as to the child support arrearage. Therefore, interest on the arrearage should accrue from March 5, 2001, not the date of the trial court's original judgment.

Finally, when the trial court calculated the interest from the date of the original judgment, the court compounded the interest at the rate of twelve percent annually. While the trial court used the correct rate of interest,[5] the court erred by compounding the interest on the judgment. The interest on the judgment should have been simple interest, not compound interest as utilized by the

---

[4]In contrast, our decisions in **Gotten** and **Newton** effectively determined the appropriate judgment to be entered upon remand. By reviewing the record before us in those cases, we could determine the correct amount of the award. It follows that the trial court did not have to take further action in order to enter its judgment upon remand in **Gotten** and **Newton**. Based on the record before us in those cases, we were able to "do what should have been done in the first instance." Therefore, it was appropriate to assess interest from the date of the original judgment by the trial court.

[5]Section 26-5-101(a)(5) states that a judgment for child support arrearage "shall accrue interest from the date of the arrearage at the rate of twelve percent (12%) per annum."

trial court. Tenn. Code Ann. § 47-14-102(7) (2001); *see also Pertew v. Pertew*, No. 03A01-9711-CH-00505, 1999 Tenn. App. LEXIS 445, at *28 & *30 (Tenn. Ct. App. July 13, 1999) (*no perm. app. filed*).

Accordingly, we reverse the trial court's decision to assess interest from the date of its original judgment. Further, we hold that the trial court erred in computing the interest on the judgment. On remand, the trial court must assess simple interest on the judgment from March 5, 2001. The interest must be computed according to the method provided by section 47-14-102(7) of the Tennessee Code.

Regarding Ms. Berryhill's first issue, she contends that the trial court erred by failing to apply the child support guidelines retroactively to the date of the child's birth.[6] Courts are required to apply the guidelines as a rebuttable presumption in all child support cases, "even if the order is being sought for a retroactive period before October 13, 1989." *Berryhill*, 21 S.W.3d at 192; Tenn. Comp. R. & Regs. Ch. 1240-2-4-.01(2). Because there is a rebuttable presumption as to the applicability of the Child Support Guidelines, the juvenile court retains discretion in making child support awards, but the discretion must be implemented within the structures of the Child Support Guidelines. *Berryhill*, 21 S.W.3d at 193. To deviate from the presumptive amount of child support due under the guidelines, the trial court must enter the following:

> [A] written or specific finding that the application of the child support guidelines would be unjust or inappropriate in that particular case. Findings that rebut these guidelines must state the amount that would have been required under the guidelines and include a justification for deviation from the guidelines which takes into consideration the best interest of the child.

Tenn. Comp. R. & Regs. Ch. 1240-2-4-.02(7); *see id*.

When a trial court exercises its discretion to deviate from the Child Support Guidelines, we review its decision according to the "abuse of discretion" standard of review. *Tallent v. Kates*, 45 S.W.3d 556, 560 (Tenn. Ct. App. 2000); *State ex. rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). A discretionary decision will be set aside only when the trial court misconstrued or misapplied the controlling legal principles or acted contrary to the substantial weight of the evidence. *White v. Vanderbilt University*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999). Therefore, an appellate court will review a trial court's discretionary decision to determine: "(1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives." *Id.* at 223; *see also Kaatrude*, 21 S.W.3d at 248.

In the present case, the trial court made the following written finding:

---

[6]Curiously, Dr. Rhodes did not file a brief in response to Ms. Berryhill's three issues. Accordingly, Ms. Berryhill's issues are before us solely on the questions and arguments raised in her brief.

[T]he application of the guidelines would be unjust or inappropriate during the approximately 12-year period of time prior to the enactment of the guidelines in light of the testimony of the petitioner regarding her monthly expenditures and the expenditures regarding the child. That if strict application of the Child Support Guidelines were applied from birth of the child until October of 1989, it would be unjust based on the facts of this case. If the Court took the average income of the defendant and applied it to guidelines established in 1989 based upon the proof at trial of wages reported to the Internal Revenue Service during the years 1983, 1987, 1988 and 1989 then the defendant's income was $164,564 per year. Thus for the 145 months of this period of time the child support would have been $2,879.87 per month or $417,581.15 prior to the enactment of the Child Support Guidelines. After hearing the proof and reviewing the facts of the petitioner's actual expenses from 1977 until 1989, the Court finds that such retroactive child support would constitute unjust enrichment of the petitioner.

After the court determined that the application of the Child Support Guidelines would be improper in calculating the pre-1989 arrearage, the court proceeded to illustrate how it arrived at the amount of arrearage from the time of the child's birth until the enactment of the guidelines. Based on Ms. Berryhill's proof at trial regarding her expenses and the expenses of the child, the court determined that Ms. Berryhill's average monthly expenses were $1,932 per month from 1977 until 1983. The court then divided this amount by three, as Ms. Berryhill was providing for an additional minor child during that time period. The court took this figure, $644.00, and multiplied it by 72 months. The resulting product represented Ms. Berryhill's expenses in raising Dr. Rhodes's child. The court took this product, $46,368, and subtracted the amount Dr. Rhodes contributed during that time period, which was $21,000. The total arrearage, as determined by the court, was $25,368.00. The court computed the arrearage from 1983 until 1989 similarly, except it did not account for an additional minor child during that period. Ms. Berryhill was only caring for Dr. Rhodes's child at that time. The arrearage for the time period from 1983 until 1989 was $62,352. Accordingly, the total, pre-guideline arrearage came to $87,720.

After carefully reviewing the record and the facts before us, we cannot say that the trial court abused its discretion by deviating from the presumptive amount of child support due under the guidelines from 1977 to 1989. The court made a written and specific finding that the guidelines would be inappropriate in this case. The court illustrated the amount that Dr. Rhodes would owe under the guidelines. Further, the court determined the expenses that Ms. Berryhill incurred in raising the child during the years at issue. Based on these figures, the court determined that an application of the guidelines would "constitute unjust enrichment of [Ms. Berryhill]." The court's decision to deviate from the guidelines was supported by the evidence, made pursuant to the applicable legal principles, and was within the range of acceptable alternatives. Further, the court's decision was supported by a written finding as required by the supreme court's decision in **Berryhill** and the Child Support Guidelines.

Finally, we note that the court did not have to consider the best interests of the child, as mandated by the Department of Human Services Rules and Regulations, when deviating from the guidelines in this case. Tenn. Comp. R. & Regs. Ch. 1240-2-4-.02(7). Under the particular facts of this case, the award of retroactive child support was to reimburse Ms. Berryhill, the custodial parent, for contributing more than her share of the child's support.[7] The best interests of the child, who is now an adult,[8] did not have to be considered by the trial court in making its written finding supporting its deviation from the guidelines. Accordingly, we hold that the trial court did not err in deviating from the guidelines when it determined the child support arrearage from 1977 to 1989.

In Ms. Berryhill's second issue, she maintains that the trial court erred in denying her request for prejudgment interest dating back to the birth of her child. Prejudgment interest "may be awarded by courts or juries in accordance with the principles of equity." Tenn. Code Ann. § 47-14-123 (2001). An award of prejudgment interest is more likely in accord with the principles of equity if a "plaintiff's right to recovery and the amount of such recovery are not disputed on reasonable grounds." *Alexander v. Inman*, 974 S.W.2d 689, 698 (Tenn. 1998) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920 (Tenn. 1998). The trial court is vested with a great deal of discretion when deciding whether to award prejudgment interest. *Id.* This same standard and scope of review apply to parties who are seeking prejudgment interest on past child support obligations. *See Silverstein v. Rice*, No. W1999-01336-COA-R3-CV, 2000 Tenn. App. LEXIS 714, at *13 (Tenn. Ct. App. Oct. 20, 2000) *perm. app. denied* (Tenn. Apr. 9, 2001). Accordingly, we must again apply the deferential "abuse of discretion" standard of review. *Alexander*, 974 S.W.2d at 698.

Ms. Berryhill argues that Dr. Rhodes's child support obligations were readily ascertainable and equity demands that she should be compensated for the loss of funds throughout the "child's entire minority." We respectfully disagree. It is clear from the significant appellate history of this case that Dr. Rhode's obligation was far from certain. Additionally, at the original trial of this matter, Dr. Rhodes was within reason to dispute Ms. Berryhill's claims. The trial court did not abuse its discretion by denying Ms. Berryhill's request for prejudgment interest. Accordingly, we affirm the decision of the trial court regarding prejudgment interest.

Finally, Ms. Berryhill requests that we award her the attorney's fees and costs she incurred as a result of this appeal. The determination of whether to award attorney's fees for an appeal is within our discretion.[9] In light of our disposition of this appeal, we deny Ms. Berryhill's request.

---

[7] "An award for retroactive child support is generally considered to have two purposes: to benefit the parties' child and to reimburse the custodial parent for contributing more than [their] fair share to the child's support." *State ex rel. Stewart v. Lockett*, No. M2001-00809-COA-R3-JV, 2002 Tenn. App. LEXIS 66, at *4, (Tenn. Ct. App. Jan. 30, 2002) (*no perm. app. filed*) (citing *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)).

[8] The child turned 18 in September, 1995.

[9] Section 36-5-103(c) of the Tennessee Code states that "[t]he plaintiff spouse may recover from the defendant spouse . . . reasonable attorney fees incurred in enforcing any decree for . . . child support . . . in the discretion of such

(continued...)

The judgment of the trial court is reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Ms. Betty Berryhill, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[9](...continued)
court." Tenn. Code Ann. § 36-5-103(c)(2000).