IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 15, 2015


**IN RE CHASE R.**


**Appeal from the Juvenile Court for Shelby County**
**No. U2154     Dan H. Michael, Judge**

_____


**No. W2015-00493-COA-R3-JV – Filed October 6, 2015**
_____


This is a Title IV-D child support case. Father/Appellant appeals the trial court's modification of his child support obligation on grounds that: (1) the Juvenile Court did not have subject matter jurisdiction to modify the Circuit Court's child support order; and (2) the trial court erred in applying the Child Support Rules and Regulations in calculating Appellant's monthly child support obligation. Appellant also appeals the trial court's award of attorney's fees in this case. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Norris Rickett, Memphis, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter, and Rebekah A. Baker, Senior Counsel, for the appellee State of Tennessee *ex rel*. Shena Lavette Rickett.


**OPINION**


**I.  Background**


On March 17, 2008, Appellee State of Tennessee *ex rel*. Shena Lavette Rickett ("State") filed a petition for child support against Norris Claude Rickett ("Appellant") in the

Juvenile Court of Shelby County. In its petition, the State alleged that Ms. Rickett had applied for Title IV-D Social Security benefits on behalf of her minor child (d.o.b. November 13, 2007) and that Mr. Rickett was the child's natural father. This matter was never heard because the parties, who were married, reconciled. However, the parties were ultimately divorced by order of the Circuit Court of Shelby County on July 1, 2013. Concurrent with the divorce, Mr. Rickett was ordered to pay $478.00 per month in child support.

Ms. Rickett applied for Title IV-D child support services on July 30, 2013 and, again, on August 6, 2013. On September 6, 2013, the State filed, in the Circuit Court, a notice of Title IV-D services and transfer to the Juvenile Court. This notice was filed pursuant to Tennessee Code Annotated Section 36-5-402(b)(2) and the Child Support Enforcement Agreement of 2009.

On December 11, 2013, the State filed a motion to confirm the Juvenile Court's jurisdiction over the child support issue. In response, on December 31, 2013, Mr. Rickett, who was acting *pro se*, filed a response to the State's motion. Therein, he denied that either he or Ms. Rickett had requested Title IV-D services and asserted that the State should not be involved. By order of April 11, 2014, the Circuit Court found "[t]hat the issue of child support was properly transferred to [the] Juvenile Court . . . in accordance with the December 4, 2009 Agreement between Circuit Court, Chancery Court, and Juvenile Court . . . which provides that [the] Juvenile Court shall have jurisdiction over all child support actions in Shelby County . . . pursuant to Title IV-D of the Social Security Act." By order of May 1, 2014, the Juvenile Court confirmed its jurisdiction over this child support matter.

On April 24, 2014, the State filed a petition in the Juvenile Court to establish child support arrears. The Juvenile Court Magistrate heard the State's petition on September 17, 2014. By order of October 17, 2014, the Juvenile Court Magistrate held, in relevant part:

> That the previous order of the Circuit Court for Shelby County, Tennessee entered on July 1, 2013 be modified to increase child support payments by income assignment from $478.00 per month to $614.00 per month beginning October 1, 2014 to be paid to the Central Child Support Receipting Unit . . . .

The October 17, 2014 order also approved and incorporated a Child Support and Credit Worksheet, which set Mr. Rickett's monthly gross income at $4,110.00. On September 18, 2014, Mr. Rickett appealed the Magistrate's finding to the Juvenile Court. The Juvenile Court held a hearing on January 9, 2015. By order of March 2, 2015, the Juvenile Court reaffirmed that it had jurisdiction over the child support matter. The court then held, in pertinent part:

7. That [Mr. Rickett] presented check stubs for the first quarter of 2014 from his employer, Hacros Chemical, Inc. showing his average monthly income for the first quarter of 2014 was $5,324.21 . . . however, the testimony was that his average income for an extended period was $4,372.76 per month. The defendant also worked at Star Transportation, but failed to provide pay records from this employer.

8. That State Transportation produced [Mr. Rickett's] pay records pursuant to an Administrative Subpoena from the State of Tennessee.

9. That [Mr. Rickett] earned income from Star Transportation during 2014 in the amount of $23,357.36 for an average monthly income of an additional $1,946.00 per month.

10. That [Mr. Rickett's] average monthly income and earning ability is $6,319.00 per month.

11. That [Mr. Rickett] admitted he has two identities with two separate social security numbers and names. . . .

12. That [Mr. Rickett] testified he works on weekends and does not see the child on weekends, but that the mother brings the child to his house to spend the night when she has to be at work at 4:40 a.m., but he did not know how often that occurred or what dates, and that the child spent several nights with him during the recent holidays.

13. That the Court finds [Mr. Rickett's] testimony is not credible as his answers were often evasive, non-responsive, and contradicted by credible evidence.

The order incorporated a child support worksheet, showing Mr. Rickett's monthly gross income as $6,319.00. The trial court gave Ms. Rickett credit for 300 days of parenting time and credited Mr. Rickett with 65 days of parenting time for the previous 12 month period. Based on the foregoing findings and the child support worksheet, the trial court increased Mr. Rickett's monthly child support obligation to $944.00. The court held that work-related child care expenses were included in the child support payment, so Mr. Rickett did not need to make separate child care payments. The court gave Mr. Rickett a credit of $365.50 toward his child support arrears and awarded the guardian ad litem $750.00 in attorney's fees and costs.

## II. Issues

Mr. Rickett appeals. From Mr. Rickett's brief and argument, we perceive that there are three issues for review, which we state as follows:

1. Whether the Juvenile Court properly exercised jurisdiction over this child support matter.

3

2. Whether the Juvenile Court properly applied the child support rules and regulations in formulating Mr. Rickett's monthly child support obligation.
3. Whether the Juvenile Court erred in awarding Ms. Rickett attorney's fees and costs.

### III. Standard of Review

In **Richardson v. Spanos**, 189 S.W.3d 720 (Tenn.Ct.App.2005), this Court discussed the standard of review governing child support cases as follows:

Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines.

Under current law, the amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive amount of child support owed. This amount of support is rebuttable. Accordingly, trial courts may, in their discretion, deviate from the amount of support required by the Child Support Guidelines, but, when they do, they must make specific written findings regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case.

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. Appellate courts do not have the latitude to substitute their discretion for that of the trial court. Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, and reasonable minds can disagree about its correctness. Discretionary decisions must, however, take the applicable law and the relevant facts into account. Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.

4

*Spanos*, 189 S.W.3d at 725 (internal citations omitted). "When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tennessee Rule of Appellate Procedure 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 525 (Tenn. 2010) (citing *Johnson v. Nissan N. Am., Inc.,* 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)). Furthermore, "[w]hen credibility and weight to be given testimony are at issue, considerable deference must be afforded the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony." *Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 447 (Tenn.2012).

Although Tennessee Rule of Appellate Procedure 13(d) directs this Court to review the evidence in the record to determine whether there is material evidence to support the ruling of the trial court, here the Appellant has included neither a transcript of the evidence adduced at the January 9, 2015 hearing, nor a Tennessee Rule of Civil Procedure 24 statement of that evidence. In the absence of a transcript or statement of the evidence, this Court must presume that every fact admissible under the pleadings was found or should have been found in the appellee's favor. *Gotten v. Gotten*, 748 S.W.2d 430, 432 (Tenn. Ct. App.1987); *Richmond v. Richmond*, 690 S.W.2d 534, 536 (Tenn. Ct. App. 1985); *In re Rockwell*, 673 S.W.2d 512, 516 (Tenn.Ct.App.1983).

While we are cognizant of the fact that Appellant is self-represented in this case, it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." *Brown v. Christian Bros. Univ.*, No. W2012–01336–COA–R3–CV, 2013 WL 3982137, at *3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). As we have explained,

> parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. M2010–01401–COA–R3–CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)).

## IV. Analysis

### A. Jurisdiction of the Juvenile Court

As a general rule, the circuit or chancery court that issues a final decree of divorce retains jurisdiction over related child support matters. *See* Tenn. Code Ann. §§ 36-5-101(a)(1) and 36-6-101(b). However, Tennessee Code Annotated Section 36-5-402(b)(2) provides:

> In lieu of requesting a magistrate, the presiding judge may, with the agreement of all judges having child support jurisdiction in a particular county or counties, enter into agreements with juvenile courts to set, enforce, and modify support orders as provided in this part. In the event such an agreement is entered into, the juvenile court shall have jurisdiction over all support cases in such county, except as may otherwise be provided in the agreement, any contrary provision of law notwithstanding.

Our record contains an Agreement, which was executed on December 4, 2009, by and between the chancery, circuit, and juvenile court judges of Shelby County. This Agreement, which was executed under the authority of Tennessee Code Annotated Section 36-5-402(b)(2), *supra*, gives the Shelby County Juvenile Court jurisdiction over child support matters where the circuit or chancery court has previously exercised jurisdiction and one of the parties has applied for Title IV-D services. In light of this Agreement, and the authority vested under Tennessee Code Annotated Section 36-5-402(b)(2), the Circuit Court properly transferred this matter to the Juvenile Court.

### B. Child Support

Tennessee Code Annotated Section 36-5-101(e) provides, in relevant part:

> In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines, as provided in this subsection (e). If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

6

Pursuant to this statute, the child support guidelines establish a rebuttable presumption of the child support amount. If the trial court orders an amount that differs from the child support guidelines, the court must make written findings of fact that the application of the guidelines would be unjust or inappropriate in a particular case. Tennessee Code Annotated Section 71-1-132(a)(1) vests the Tennessee Department of Human Services with rulemaking authority to establish child support guidelines.

Once a child support obligation has been established, a party may seek to modify the support amount based on a significant variance, as defined in the child support guidelines. Tenn. Code Ann. § 36-5-101(g); *Kaplan v. Bugalla*, 188 S.W.3d 632,636 (Tenn. 2006). "The parent seeking to modify a child support obligation has the burden to prove that a significant variance exists." *Wine v. Wine*, 245 S.W.3d 389, 393-94 (Tenn. Ct. App. 2007) (citing *Turner v. Turner*, 919 S.W.2d 340, 345 (Tenn. Ct. App. 1995)). The Tennessee Child Support Guidelines define a significant variance, in pertinent part, as follows:

> For all orders that were established or modified January 18, 2005 or after, under the income shares guidelines, a significant variance is defined as at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order . . . .

Tenn. R. & Regs. 1240-2-4-.05(2)(c). Here, in its October 17, 2014 order, the Circuit Court set Mr. Rickett's child support at $614.00 per month. In the order giving rise to the instant appeal, the Juvenile Court raised Mr. Rickett's child support obligation to $944.00 per month. The deviation between the $614.00 amount and the modified amount satisfies the significant variance requirement set out above. However, Mr. Rickett argues that the trial court improperly imputed income to him in arriving at the modified amount of support.

The Child Support Guidelines define "gross income," in relevant part, as follows:

Gross income of each parent shall be determined in the process of setting the presumptive child support order and shall include all income from any source (before deductions for taxes and other deductions such as credits for other qualified children), whether earned or unearned, and includes, but is not limited to, the following:
(i) Wages;
(ii) Salaries;
(iii) Commissions, fees, and tips;

7

(iv) Income from self-employment;
(v) Bonuses;
(vi) Overtime payments . . . .

Tenn. R. & Regs 1240-2-4-.04(3)(a)(1).

As set out in its March 2, 2015 order, the trial court found that Mr. Rickett "presented check stubs for the first quarter of 2014 from his employer, Hacros Chemical, Inc. showing his average monthly income for the first quarter of 2014 was $5,324.21." The court noted, however, that the testimony was that Mr. Rickett's average income for an extended period was $4,372.76 per month. In the absence of a transcript or statement of the evidence and considering the lack of any countervailing evidence, we affirm the trial court's finding that Mr. Rickett's gross monthly income from Hacros Chemical was $4,372.76 per month. *Gotten*, 748 S.W.2d at 432; *Richmond*, 690 S.W.2d at 536; *In re Rockwell*, 673 S.W.2d at 516. In his appellate argument, Mr. Rickett does not dispute the Hacros Chemical income; rather, he contends that his income from Star Transportation was erroneously included in the trial court's calculation of his gross monthly income. Again, we have no transcript or statement of the evidence in our record, but we do have the subpoenaed income statements from Star Transportation that were admitted as exhibits to the trial. These records clearly indicate that, during 2014, Mr. Rickett received an average monthly income from Star Transportation of $1,946.00 per month. Although Mr. Rickett disputes this income, the trial court made a specific finding that he was not a credible witness and that he used two different social security numbers and names. From the Star Transportation records, and in light of the trial court's credibility findings, we conclude that the evidence preponderates in favor of the trial court's calculation of Mr. Rickett's gross monthly income of $6,319.00 for purposes of the child support worksheet. Accordingly, we will not disturb the trial court's calculation of child support in this case.

### C. Attorney's Fees

Tennessee Code Annotated Section 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such

8

court.[1]

"In cases involving the custody and support of children, ... it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate." ***Deas v. Deas***, 774 S.W.2d 167, 169 (Tenn. 1989). Although "[t]here is no absolute right to such fees, . . . their award in custody and support proceedings is familiar and almost commonplace." ***Id***. at 170. In awarding attorney's fees pursuant to section 36-5-103(c), the trial court may consider proof of inability to pay, but such consideration will not be controlling. ***Sherrod v. Wix***, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). A trial court's determination concerning attorney's fees is discretionary, and this Court "will not interfere except upon a clear showing of abuse of that discretion." ***Aaron v. Aaron***, 909 S.W.2d 408, 411 (Tenn. 1995).

In the absence of a transcript or statement of the evidence, we must assume that there was sufficient evidence to support the trial court's award of attorney's fees. ***Gotten***, 748 S.W.2d at 432; ***Richmond***, 690 S.W.2d at 536; ***In re Rockwell***, 673 S.W.2d at 516. Here, the parties have quite a disparity in income. Mother has a monthly gross income of $2,539.00, and Father has a monthly gross income of $6,319.00. Furthermore, the trial court specifically found that Mr. Rickett's testimony was not credible and that Mr. Rickett used a second identity, which made it more difficult to find undisclosed income. We further note that the attorney's fees in this case were not awarded directly to Ms. Rickett. Rather, the trial court awarded the $750.00 to the child's guardian ad litem. It is well established that, in Title IV-D cases, a court may not access fees and costs to the State, the Title IV-D contractor, or the applicant unless there is a clear showing of Tennessee Rule of Civil Procedure 11 violations. Tenn. Code Ann. §36-5-101(l)(2). However, the Legislature has placed no such limitation on the assessment of attorney's fees and costs to the party against whom the Title IV-D enforcement action is brought. In fact, Tennessee Code Annotated 36-5-101(l)(1) provides that

> the court may, in its discretion, at any time pending the suit, upon motion and after notice and hearing, make any order that may be proper to compel a spouse to pay any sums necessary to enable the other spouse to prosecute or defend the suit and to provide for the custody and support of the minor children of the parties during the pendency of the suit, and to make other orders as it deems appropriate. In making any order under this subsection (l),

---

[1] In Tennessee, Title IV-D cases are considered "child support enforcement actions." 2008 Op. Tenn. Att'y Gen. No. 08-118 (citing ***State ex rel. Whitley v. Lewis***, 244 S.W.3d 824, 830 (Tenn. Ct. App. 2007)) ("Generally, all actions by the Department under Title IV-D have been characterized as 'child support enforcement actions.'").

the court shall consider the financial needs of each spouse and the children, and the financial ability of each spouse to meet those needs and to prosecute or defend the suit.

In light of the parties' respective incomes, and the court's findings concerning Mr. Rickett's lack of candor in both his testimony and in the disclosure of his income, we conclude that the trial court did not abuse its discretion in awarding attorney's fees to the guardian ad litem in this case.

## V. Conclusion

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Norris Claude Rickett and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE